Lewis Jubran, Esq. (DC Bar no. 1028219)
Abusharar and Associates
501 N. Brookhurst St. #202
Anaheim, CA 92801
Tel: 714-535-5600
Fax: 714-535-5605
Email: associate@abushararlaw.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| Majd Obeid; Mary Jane Ibatuan Ty, <br><br> 1379 E. Hawk Way <br> Eagle Mountain, UT   84005 <br><br>             Plaintiffs, <br><br> vs. <br><br><br> **United States Department of Homeland Security; United States Citizenship and Immigration Services; Alejandro Mayorkas**, Secretary, Department of Homeland Security; **Ur M. Jaddou**, Director, U.S. Citizenship and Immigration Services; **Ted H. Kim,** Associate Director of Refugee, Asylum, and International Operations; **Houston Asylum Office; Marie Hummert,** Director of the Houston Asylum Office;  **Matthew D. Emrich,** Associate Director of USCIS Fraud Detection and National Security Directorate; <br><br> Office of General Counsel <br> US Department of Homeland Security 2707 Martin Luther King Jr. Ave., SE <br> Washington DC   20528-0485 | Case No.: <br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 1

**Christopher A. Wray,** Director of Federal
Bureau of Investigations

Attorney General
US Department of Justice
950 Pennsylvania Ave, NW
Washington DC   20530-0001

Defendants.

## **INTRODUCTION**

1.  This action is brought by Plaintiffs Majd Obeid and Mary Jane Ibatuan Ty by and

through their attorney, to request issuance of a writ of mandamus or in the nature of mandamus

and/or to compel under the Administrative Procedure Act ("APA") ordering Defendants and

those acting under them to process an Application for Asylum and for Withholding of Removal

which was received and pending as of December 22, 2015, and which has still has not been

called for an interview.

2.  On December 22, 2015, Plaintiff Majd Obeid filed an I-589 Application for Asylum and

for Withholding of Removal to the California Service Center.  (**Exhibit A- I589 Application for**

**Asylum and Withholding of Removal and Receipt Notice**).   The basis of his asylum

application is that he fears persecution in Syria on account of his Sunni religion, his political

opinion and the fact that he would be conscripted into the Syrian military and forced to take part

in atrocities against innocent civilians and the fact that he would be perceived by the Syrian

regime as an asylum seeker because of the time he has been outside the country.    Plaintiff Mary

Jane Ibatuan Ty is Plaintiff Majd Obeid's spouse and is identified in the asylum application as a derivative applicant.

3.   On the date that Plaintiff Majd Obeid filed his asylum application, he was residing in Chula Vista, California and his case was therefore assigned to the Los Angeles Asylum Office. However, on January 22, 2021, Plaintiffs relocated to Eagle Mountain, Utah and he promptly filed an AR-11 Change of Address form with Defendant Los Angeles Asylum office and his case was thereupon transferred to the Houston Asylum Office.   **(Exhibit B – AR-11 Change of Address)**.

4.   On January 25, 2021, Plaintiffs filed a brief to the Houston Asylum Office that was in support of the previously filed I-589 Application for Asylum and Withholding of Removal. **(Exhibit C- Cover Letter and Brief in Support of Application for Asylum)**.

5.   Since Plaintiff filed his AR-11 Change of Address form with the Defendant Los Angeles Asylum Office, he has not received any communications from Defendant Houston Asylum Office about when his case would be scheduled for an interview.

6.   Defendants have violated the Administrative Procedures Act ("APA") by failing to schedule Plaintiffs' asylum application for an interview which has been pending now for over six years.  Plaintiffs seeks to compel Defendants, through a writ of mandamus, to schedule an interview(s) for the pending asylum application.

## **PARTIES**

7.   Plaintiff MAJD OBEID is a citizen of Syria.   Plaintiff filed his I-589 Application for Asylum and Withholding of Removal on December 22, 2015.  Plaintiff MARY JANE

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF
IMMIGRATION MANDAMUS - 3

IBATUAN TY is Plaintiff MAJD OBEID's spouse and she is listed as a derivative applicant on his application.

8. Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY (hereinafter "DHS") is an agency of the United States government involved in the acts challenged, employs the officers named as defendants, and includes the U.S. Citizenship and Immigration Services and the officers named as defendants in this complaint.

9. Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (hereinafter "USCIS") is an agency of the United States government under the DHS, overseeing the officers named as defendants in this Complaint.

10. Defendant ALEJANDRO MAYORKAS (hereinafter "Secretary Mayorkas") is the Secretary of the Department of Homeland Security. This suit is brought against Secretary Mayorkas in his official capacity, as he is charged with the administration and enforcement of all immigration and citizenship laws that are bound in the powers, duties, and functions of the Department of Homeland Security.

11. Defendant UR M. JADDOU (hereinafter "Director Jaddou") is the Director of USCIS, the Agency charged with adjudicating Plaintiff's asylum application. This suit is brought against Director Jaddou in her official capacity, as she is charged with oversight, administration, and execution of immigration laws of the United States.

12. Defendant TED H. KIM (hereinafter "Acting Associate Director Kim") is the Acting Associate Director of Refugee, Asylum, and International Operations. This suit is brought against Acting Associate Director Kim in his official capacity, as he is charged with supervision

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 4

over all asylum offices, and requires some applications to be forwarded to headquarters before final adjudication, and may, upon information and belief, have ordered that Plaintiff's case be forwarded to his office for its review.

13. Defendant HOUSTON ASYLUM OFFICE (hereinafter "Houston Asylum Office") is an office within USCIS and the federal agency with direct authority and responsibility to adjudicate Plaintiff's asylum application.

14. Defendant MARIE HUMMERT (hereinafter "Director Hummert") is the director of the Houston Asylum office. This suit is brought against Director Hummert in her official capacity, as she is charged overseeing the adjudication of the asylum applications at the Houston Asylum Office in a timely manner, and ensuring the efficiency of the officers employed.

15. Defendant MATTHEW D. EMRICH (hereinafter "Associate Director Emrich") is the Associate Director of USCIS Fraud Detection and National Security Directorate. This suit is brought against Associate Director Emrich in his official capacity, as he supervises all USCIS staff who review asylum applications to ensure that immigration benefits are not granted to individuals who pose a threat to national security or public safety, or who seek to defraud the immigration system. Certain applications must be reviewed by the Fraud Detection and National Security Directorate before their final adjudication. Upon information and belief, USCIS has not processed Plaintiffs' asylum application because the Fraud Detection and National Security Directorate has never completed its review.

16. Defendant CHRISTOPHER A. WRAY (hereinafter "Director Wray") is the Director of the Federal Bureau of Investigations. This suit is brought against Director Wray in his official

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 5

capacity, as he is responsible for overseeing the background checks involved with immigration matters.

## **JURISDICTION**

17. The Administrative Procedure Act recognizes a right of judicial review for any person "suffering legal wrong because of an agency action or aggrieved or adversely affected by such action within the meaning of any relevant statutes." 5 U.S.C. § 702. Plaintiffs suffered a legal wrong and continue to suffer because of the Defendants' failure to act upon the pending Asylum application for indefinite periods of time.

18. This Court has jurisdiction over the present action pursuant to 8 C.F.R. § 204, Immigration & Nationality Act §203 (b)(1)(C); 28 U.S.C. § 1131; 28 U.S.C. §1361, the Mandamus Act; 28 U.S.C. §2201, the Declaratory Judgment Act; and 5 U.S.C. §701-706, the Administrative Procedures Act. Costs and attorney fees will be sought pursuant to the Equal Access to Justice Act, 5 U.S.C. §504 and 28 U.S.C. §2412(d), et seq. Relief is requested pursuant to said statutes.

19. The APA also provides pursuant to 5 U.S.C. § 706(1) that courts "shall compel agency action unlawfully withheld." Courts have held that this provision eliminates court discretion to grant relief once an agency has violated a statutory deadline. *See Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1178 (9th Cir. 2002) (noting that when "Congress has specifically provided a deadline for performance, ... no balancing of factors is required or permitted.")

## VENUE

20. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(e) which provides that in a civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his or her official capacity, or under the color of legal authority, or any agency of the United States, the action may be brought in any judicial district in which the defendant in the action resides.   Because the Defendants are in the District of Columbia, including the United States Department of Homeland Security and its employees, venue is proper in this Court.

## EXHAUSTION OF REMEDIES

**21.** Plaintiffs have no administrative remedies.  Since they submitted the I-589 Application for Asylum on December 22, 2015, Plaintiffs have received no correspondence or communications whatsoever from Defendants about the pending asylum application and when it will be scheduled for an interview.   There are no administrative remedies for neglect of duty.

## CAUSE OF ACTION

22. Pursuant to 8 U.S.C. §1158, Plaintiff Majd Obeid filed an Application for Asylum and Withholding of Removal with Defendant United States Citizenship and Immigration Services on December 22, 2015.   **(Exhibit A – I-589 Application for Asylum and Withholding of Removal and Acknowledgement of Receipt).**

23.  On January 22, 2021, Plaintiffs filed an AR-11 Change of Address form with the Los Angeles Asylum Office and shortly afterwards they filed a Brief in support of the I-589 Application for Asylum to the Houston Asylum Office.  **(Exhibit B and Exhibit C).**

24. Since they filed their I-589 Application for Asylum, Plaintiffs have not received any communications whatsoever from Defendant Houston Asylum Office or any other defendant

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 7

about when the asylum interview will be scheduled.  Plaintiffs therefore have no way of knowing how much longer the scheduling process will take.

25. Under 28 U.S.C. § 1361, the district courts shall have original jurisdiction of any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

26. Under the Administrative Procedures Act, a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

27. Defendants have a statutory duty to adjudicate asylum requests within 180 days of filing pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii).  It has been over six years since Plaintiff Majd Obeid applied for Asylum and his case has still not been scheduled for an interview.

28. Plaintiffs have no adequate remedy at law, and will continue to suffer irreparable harm if the asylum application is not promptly scheduled for an interview and adjudicated.

27. Pursuant to 28 U.S.C. § 1361, this Court has "original jurisdiction in the nature of the mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the [Plaintiffs.]"

28. Pursuant to 28 U.S.C. § 1651, this Court may issue any and all "writs necessary or appropriate in aid of [the Court's] respective jurisdiction [ ] and agreeable to the usages and principles of law."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS - 8

**CLAIM FOR RELIEF**

29. Plaintiffs' claim in this action is clear and certain. Plaintiff realleges paragraphs 1 through 28, and, as if fully set forth, Plaintiffs are entitled to an order in the nature of mandamus to compel Defendants to complete administrative processing and schedule an interview for the pending Asylum application.

30. As a result of Defendants' failure to perform their duties, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm.  Specifically:

a. Plaintiffs have been irreparably damaged from the fear of not knowing what will happen with the asylum case for the past six years.  They have been constantly hoping for a date to interview for the application for asylum, so they would not have to worry about their future.  Because of the long wait and unknowing, Plaintiffs are enduring significant psychological damage.

b. The delay is causing irreparable harm to Plaintiffs who are not able to continue with their lives in the United States without fear of returning to Syria, a country where they will more likely than not be persecuted, tortured, or killed.

31. The Defendants, in violation of the Administrative Procedures Act, are unlawfully withholding or unreasonably delaying action on Plaintiff Majd Obeid's application, and have failed to carry out the non-discretionary adjudicative functions delegated to them by law with regard to his case.

32. The Defendants, in violation of the Administrative Procedures Act and 22 C.F.R. 42.81(a), are unlawfully withholding or unreasonably delaying action on Plaintiff's application

and have failed to carry out the non-discretionary adjudicative functions delegated to them by law with regard to his case.

33. The duty of the Defendants is non-discretionary, ministerial, and so plainly described as to be free from doubt that mandamus is appropriate.

34. Plaintiff Majd Obeid has attempted to learn about the status of his pending Asylum and Withholding of Removal application, all to no avail. Only Defendant Houston Asylum Office is able to make decisions on scheduling an asylum interview, leaving no adequate remedy. Accordingly, Plaintiffs have been forced to pursue the instant action.

**PRAYER**

35. WHEREFORE, in view of the arguments and authorities noted herein, Plaintiffs respectfully prays that the Defendants be cited to appear herein and that, upon due consideration, the Court:

  a.  Accept jurisdiction and maintain continuing jurisdiction of this action;

  b.  Declare as unlawful the violation by Defendants of failing to act on a properly filed Asylum and Withholding of Removal application;

  c.  Declare Defendants' failure to carry out the adjudicative functions delegated to them by law with regard to Plaintiffs' case as agency action unlawfully withheld and unreasonably delayed, pursuant to 5 U.S.C. § 706(1);

  d.  Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling the Defendants to take action on Plaintiff Majd

Obeid's Asylum application by promptly scheduling his interview and then timely adjudicating his case;

e.  Issue a writ in the nature of mandamus pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1), compelling the Defendants to take action on Plaintiff Majd Obeid's Asylum and Withholding of Removal application by promptly scheduling his interview and then timely adjudicating his case;

f.  Grant attorney's fees and costs of this suit under the Equal Access to Justice Act, 28 U.S.C. § 2412;

g.  Grant such other relief at law and in equity as justice may require.

Dated this March 21, 2022                    Respectfully Submitted,

                                             /s/ Lewis Jubran

                                             Lewis Jubran, Esq.
                                             Counsel for Plaintiffs

**LIST OF EXHIBITS TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE**

**RELIEF AND FOR A WRIT IN THE NATURE OF IMMIGRATION MANDAMUS**

**<u>OBEID v UNITED STATES DEPARTMENT OF HOMELAND SECURITY</u>**

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | I-589 Application for Asylum and Acknowledgment of Receipt | 1-16 |
| B | AR-11 Change of Address form | 17 |
| C | I-589 Brief in Support of Asylum Application | 18-44 |

**EXHIBIT A**

Department of Homeland Security
U.S. Citizenship and Immigration Services

U.S. Department of Justice
Executive Office for Immigration Review

OMB No. 1615-0067; Expires 12/31/2016

**I-589, Application for Asylum
and for Withholding of Removal**

**START HERE - Type or print in black ink.  See the instructions for information about eligibility and how to complete and file this application.  There is NO filing fee for this application.**

**NOTE:** Check this box if you also want to apply for withholding of removal under the Convention Against Torture. ☒

## Part A.I.  Information About You

| 1. Alien Registration Number(s) (A-Number) *(if any)* | 2. U.S. Social Security Number *(if any)* |
|---|---|

| 3. Complete Last Name | 4. First Name | 5. Middle Name |
|---|---|---|
| OBEID | Majd | Mohi Eddin |

6. What other names have you used *(include maiden name and aliases)?*

7. Residence in the U.S. *(where you physically reside)*

| Street Number and Name | Apt. Number |
|---|---|
| 64 Kingswood Dr. | 6 |

| City | State | Zip Code | Telephone Number |
|---|---|---|---|
| Chula Vista | CA | 91911 | 6192546977 |

8. Mailing Address in the U.S. *(if different than the address in Item Number 7)*

| In Care Of *(if applicable):* | Telephone Number |
|---|---|

| Street Number and Name | Apt. Number |
|---|---|
| 64 Kingswood Dr. | 6 |

| City | State | Zip Code |
|---|---|---|
| Chula Vista | CA | 91911 |

| 9. Gender: ☒ Male ☐ Female | 10. Marital Status: ☐ Single ☒ Married ☐ Divorced ☐ Widowed |
|---|---|

| 11. Date of Birth *(mm/dd/yyyy)* 01/11/1988 | 12. City and Country of Birth Damascus      Syria |
|---|---|

| 13. Present Nationality *(Citizenship)* Syria | 14. Nationality at Birth Syria | 15. Race, Ethnic, or Tribal Group White | 16. Religion Muslim |
|---|---|---|---|

17. Check the box, a through c, that applies:  a. ☒ I have never been in Immigration Court proceedings.

 b. ☐ I am now in Immigration Court proceedings.   c. ☐ I am not now in Immigration Court proceedings, but I have been in the past.

18. Complete 18 a through c.

 a. When did you last leave your country? *(mm/dd/yyyy)* 2006     b. What is your current I-94 Number, if any? 74127771830

 c. List each entry into the U.S. beginning with your most recent entry.  List date (mm/dd/yyyy), place, and your status for each entry. *(Attach additional sheets as needed.)*

| Date 09/15/2015 | Place Chicago | Status B1/B2 Visa | Date Status Expires 08/16/2017 |
|---|---|---|---|
| Date | Place | Status | |
| | | Status | |
| | | Status | |



| 20. Passport Number N008152950 | 21. Expiration Date *(mm/dd/yyyy)* 05/14/2019 |
|---|---|
| Travel Document Number | |

| 23. Are you fluent in English? ☒ Yes ☐ No | 24. What other languages do you speak fluently? |
|---|---|

| For USCIS use only. | Action: Interview Date: _____ Asylum Officer ID#: _____ | Decision: _____ Approval Date: _____ Denial Date: _____ Referral Date: _____ |
|---|---|---|

Form I-589 (Rev. 12/29/14) Y

Department of Homeland Security
U.S. Citizenship and Immigration Services

U.S. Department of Justice
Executive Office for Immigration Review

OMB No. 1615-0067; Expires 12/31/2016

**I-589, Application for Asylum
and for Withholding of Removal**

START HERE - Type or print in black ink. See the instructions for information about eligibility and how to complete and file this application. There is NO filing fee for this application.

NOTE: Check this box if you also want to apply for withholding of removal under the Convention Against Torture. ☒

## Part A.I. Information About You

| 1. Alien Registration Number(s) (A-Number) (if any) | 2. U.S. Social Security Number (if any) |
|---|---|

| 3. Complete Last Name OBEID | 4. First Name Majd | 5. Middle Name Mohi Eddin |
|---|---|---|

6. What other names have you used (include maiden name and aliases)?

7. Residence in the U.S. (where you physically reside)

| Street Number and Name 64 Kingswood Dr. | Apt. Number 6 |
|---|---|

| City Chula Vista | State CA | Zip Code 91911 | Telephone Number 6192546977 |
|---|---|---|---|

8. Mailing Address in the U.S. (if different than the address in Item Number 7)

| In Care Of (if applicable): | Telephone Number |
|---|---|

| Street Number and Name 64 Kingswood Dr. | Apt. Number 6 |
|---|---|

| City Chula Vista | State CA | Zip Code 91911 |
|---|---|---|

| 9. Gender: ☒ Male ☐ Female | 10. Marital Status: ☐ Single ☒ Married ☐ Divorced ☐ Widowed |
|---|---|

| 11. Date of Birth (mm/dd/yyyy) 01/11/1988 | 12. City and Country of Birth Damascus    Syria |
|---|---|

| 13. Present Nationality (Citizenship) Syria | 14. Nationality at Birth Syria | 15. Race, Ethnic, or Tribal Group White | 16. Religion Muslim |
|---|---|---|---|

17. Check the box, a through c, that applies: a. ☒ I have never been in Immigration Court proceedings.
  b. ☐ I am now in Immigration Court proceedings.  c. ☐ I am not now in Immigration Court proceedings, but I have been in the past.

18. Complete 18 a through c.
  a. When did you last leave your country? (mmm/dd/yyyy) 2006  b. What is your current I-94 Number, if any? 74127771830
  c. List each entry into the U.S. beginning with your most recent entry. List date (mm/dd/yyyy), place, and your status for each entry. (Attach additional sheets as needed.)

| Date 09/15/2015 | Place Chicago | Status B1/B2 Visa | Date Status Expires 08/16/2017 |
|---|---|---|---|
| Date | Place | Status | |
| Date | Place | Status | |

| 19. What country issued your last passport or travel document? Damas-Center | 20. Passport Number N008152950 Travel Document Number | 21. Expiration Date (mm/dd/yyyy) 05/14/2019 |
|---|---|---|

| 22. What is your native language (include dialect, if applicable)? Arabic | 23. Are you fluent in English? ☒ Yes ☐ No | 24. What other languages do you speak fluently? |
|---|---|---|

| For EOIR use only. | For USCIS use only. | Action: Interview Date: Asylum Officer ID#: | Decision: Approval Date: Denial Date: Referral Date: |
|---|---|---|---|

Form I-589 (Rev. 12/29/14) Y

## Part A.II. Information About Your Spouse and Children

**Your spouse**   ☐ I am not married. (Skip to Your Children below.)

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) EC4320953 | 3. Date of Birth (mm/dd/yyyy) 07/14/1984 | 4. U.S. Social Security Number (if any) N/A |
|---|---|---|---|
| 5. Complete Last Name TY | 6. First Name Mary Jane | 7. Middle Name Ibatuan | 8. Maiden Name Monledo |
| 9. Date of Marriage (mm/dd/yyyy) 01/28/2010 | 10. Place of Marriage Doha, Qatar | 11. City and Country of Birth Calauag       Philippines | |
| 12. Nationality (Citizenship) Filipino | 13. Race, Ethnic, or Tribal Group White | | 14. Gender  ☐ Male   ☒ Female |

**15. Is this person in the U.S.?**
☒ Yes (Complete Blocks 16 to 24.)   ☐ No (Specify location): _____

| 16. Place of last entry into the U.S. Chicago | 17. Date of last entry into the U.S. (mm/dd/yyyy) 09/15/2015 | 18. I-94 Number (if any) 74127657130 | 19. Status when last admitted (Visa type, if any) B1/B2 |
|---|---|---|---|
| 20. What is your spouse's current status? B1/B2 | 21. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) 05/29/2022 | 22. Is your spouse in Immigration Court proceedings? ☐ Yes   ☒ No | 23. If previously in the U.S., date of previous arrival (mm/dd/yyyy) |

**24. If in the U.S., is your spouse to be included in this application?** *(Check the appropriate box.)*
☒ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

**Your Children.** List all of your children, regardless of age, location, or marital status.

☒ I do not have any children. *(Skip to Part A.III., Information about your background.)*

☐ I have children.   Total number of children: _____

**(NOTE:** *Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.)*

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Gender  ☐ Male   ☐ Female |

**13. Is this child in the U.S.?**   ☐ Yes (Complete Blocks 14 to 21.)   ☐ No (Specify location):

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? ☐ Yes   ☐ No | |

**21. If in the U.S., is this child to be included in this application?** *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

3

## Part A.II. Information About Your Spouse and Children (Continued)

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male  ☐ Female |

13. Is this child in the U.S.?  ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):*

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(if any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes  ☐ No | |

21. If in the U.S., is this child to be included in this application?  *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male  ☐ Female |

13. Is this child in the U.S.?  ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):*

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes  ☐ No | |

21. If in the U.S., is this child to be included in this application?  *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male  ☐ Female |

13. Is this child in the U.S.?  ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):*

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes  ☐ No | |

21. If in the U.S., is this child to be included in this application?  *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

## Part A.III Information About Your Background

**1.** List your last address where you lived before coming to the United States. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. *(List Address, City/Town, Department, Province, or State and Country.)*
(NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Number and Street *(Provide if available)* | City/Town | Department, Province, or State | Country | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|---|
| 34 IBA Arabi | Doha | Qatar | Qatar | 2011 | 09/2015 |
| Al Khazas | Damascus | Damascus | Syria | 1988 | 2006 |

**2.** Provide the following information about your residences during the past 5 years. List your present address first.
(NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Number and Street | City/Town | Department, Province, or State | Country | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|---|
| 64 Kingswood Dr. | Chula Vista | CA | USA | 11/2015 | |
| 205 Quintard Street | Chula Vista | CA | USA | 09/2015 | 11/2015 |
| 34 IBA Arabi | Doha | Qatar | Qatar | 2011 | 09/2015 |
| Muaither | Doha | Qatar | Qatar | 2010 | 2011 |
| Al Aziziya | Doha | Qatar | Qatar | 2009 | 2010 |

**3.** Provide the following information about your education, beginning with the most recent.
(NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Name of School | Type of School | Location (Address) | Attended From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|
| Mohammed Bader Ideen Abdeen | Middle School | Damascus, Syria | 2000 | 2003 |
| Laatif Wa Alnoor | Elementary | Damascus, Syria | 1994 | 1999 |
| | | | | |
| | | | | |

**4.** Provide the following information about your employment during the past 5 years. List your present employment first.
(NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Name and Address of Employer | Your Occupation | Dates From (Mo/Yr) | | To (Mo/Yr) | |
|---|---|---|---|---|---|
| Dareen International Co.   Villaggio Mall Doha | Assistant Restaurant Manager | 10 | 2009 | 08 | 2015 |
| Carrefour   Landmark Mall Doha | Staff/Crew | | 2008 | | 2009 |
| | | | | | |

**5.** Provide the following information about your parents and siblings (brothers and sisters). Check the box if the person is deceased.
(NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Full Name | City/Town and Country of Birth | Current Location |
|---|---|---|
| *Mother* Kamar       Al Khazas | Damascus, Syria | ☐ Deceased  Damascus, Syria |
| *Father* Mohi Eddin      Obeid | Damascus, Syria | ☒ Deceased |
| *Sibling* Ferras M. Obeid | Damascus, Syria | ☐ Deceased Damascus, Syria |
| *Sibling* Mohammad Hiyas M. Obeid | Damascus, Syria | ☐ Deceased Damascus, Syria |
| *Sibling* Lamis M. Obeid | Damascus, Syria | ☐ Deceased Damascus, Syria |
| *Sibling* Lina M. Obeid | Damascus, Syria | ☐ Deceased Germany |

## Part B. Information About Your Application

(NOTE:  Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part B.)

When answering the following questions about your asylum or other protection claim (withholding of removal under 241(b)(3) of the INA or withholding of removal under the Convention Against Torture), you must provide a detailed and specific account of the basis of your claim to asylum or other protection. To the best of your ability, provide specific dates, places, and descriptions about each event or action described. You must attach documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, explain why in your responses to the following questions.

Refer to Instructions, Part 1: Filing Instructions, Section II, "Basis of Eligibility," Parts A - D, Section V, "Completing the Form," Part B, and Section VII, "Additional Evidence That You Should Submit," for more information on completing this section of the form.

1.  Why are you applying for asylum or withholding of removal under section 241(b)(3) of the INA, or for withholding of removal under the Convention Against Torture? Check the appropriate box(es) below and then provide detailed answers to questions A and B below.

I am seeking asylum or withholding of removal based on:

| | | | |
|---|---|---|---|
| ☐ | Race | ☒ | Political opinion |
| ☐ | Religion | ☒ | Membership in a particular social group |
| ☐ | Nationality | ☒ | Torture Convention |

A. Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?

☐ No   ☒ Yes

If "Yes," explain in detail:
1. What happened;
2. When the harm or mistreatment or threats occurred;
3. Who caused the harm or mistreatment or threats; and
4. Why you believe the harm or mistreatment or threats occurred.

In May 2015, I was arrested in Syria by the Syrian government and was being forced to join the Army to fight for the government or participate in harming others. They learned from my passport visas that I speak English and could be an asset in the Syrian military.  My two brothers were also arrested to join the Army.   My sister was molested at a check point by a government connected militia group. My wife is a Filipina and was being harassed and discriminated against in Syria. I fear for her safety there.

B. Do you fear harm or mistreatment if you return to your home country?

☐ No   ☒ Yes

If "Yes," explain in detail:
1. What harm or mistreatment you fear;
2. Who you believe would harm or mistreat you; and
3. Why you believe you would or could be harmed or mistreated.

I fear that if I return, I would be arrested by the Syrian government and forced to join the Syrian Military to persecute others. I stand out for my young age, for my Filipina wife, for my language skills, and for my numerous visits to Qatar and the U.S. I do not wish to join the Syrian army to persecute others. I believe the Syrian government will punish me for my anti-Asad views. I also fear that various Islamic groups such as Nusra or ISIS will kill me or my wife and the weak government of Syria is not able to protect me. My wife is from the Philippines and it is not safe for us there. In May 2015, I was arrested in Syria by the Syrian government and was being forced to join the Army to fight for the government or participate in harming others. They learned from my passport visas that I speak English and could be an asset in the Syrian military.  My two brothers were also arrested to join the Army.   My sister was molested at a check point by a government connected militia group. My wife is a Filipina and was being harassed and discriminated against in Syria. I fear for her safety there.

## Part B. Information About Your Application (Continued)

**2.** Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States?

☐ No   ☒ Yes

If "Yes," explain the circumstances and reasons for the action.

> In May 2015, I was arrested in Syria by the Syrian government and was being forced to join the Army to fight for the government or participate in harming others. They learned from my passport visas that I speak English and could be an asset in the Syrian military. My two brothers were also arrested to join the Army. My sister was molested at a check point by a government connected militia group. My wife is a Filipina and was harassed and discriminated against in Syria. I fear for her safety there.

**3.A.** Have you or your family members ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

☒ No   ☐ Yes

If "Yes," describe for each person the level of participation, any leadership or other positions held, and the length of time you or your family members were involved in each organization or activity.

**3.B.** Do you or your family members continue to participate in any way in these organizations or groups?

☒ No   ☐ Yes

If "Yes," describe for each person your or your family members' current level of participation, any leadership or other positions currently held, and the length of time you or your family members have been involved in each organization or group.

**4.** Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?

☐ No   ☒ Yes

If "Yes," explain why you are afraid and describe the nature of torture you fear, by whom, and why it would be inflicted.

> In May 2015, I was arrested in Syria by the Syrian government and was being forced to join the Army to fight for the government or participate in harming others. They learned from my passport visas that I speak English and could be an asset in the Syrian military. My two brothers were also arrested to join the Army. My sister was molested at a check point by a government connected militia group. My wife is a Filipina and was being harassed and discriminated against in Syria. I fear for her safety there. The treatment I received in jail was like torture. I was put in a dark cell with many sick and injured people. I fear i will be tortured either by the government or by the Islamic extremist groups that control parts of Syria.

## Part C. Additional Information About Your Application

**(NOTE:** *Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.)*

**1.** Have you, your spouse, your child(ren), your parents or your siblings ever applied to the U.S. Government for refugee status, asylum, or withholding of removal?

☒ No      ☐ Yes

If "Yes," explain the decision and what happened to any status you, your spouse, your child(ren), your parents, or your siblings received as a result of that decision. Indicate whether or not you were included in a parent or spouse's application. If so, include your parent or spouse's A-number in your response. If you have been denied asylum by an immigration judge or the Board of Immigration Appeals, describe any change(s) in conditions in your country or your own personal circumstances since the date of the denial that may affect your eligibility for asylum.

**2.A.** After leaving the country from which you are claiming asylum, did you or your spouse or child(ren) who are now in the United States travel through or reside in any other country before entering the United States?

☐ No      ☒ Yes

**2.B.** Have you, your spouse, your child(ren), or other family members, such as your parents or siblings, ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?

☒ No      ☐ Yes

If "Yes" to either or both questions (2A and/or 2B), provide for each person the following: the name of each country and the length of stay, the person's status while there, the reasons for leaving, whether or not the person is entitled to return for lawful residence purposes, and whether the person applied for refugee status or for asylum while there, and if not, why he or she did not do so.

> I travelled to Qatar before coming to the U.S. In Qatar i only have a work permit. I have no permanent residency in any other country except Syria.

**3.** Have you, your spouse or your child(ren) ever ordered, incited, assisted or otherwise participated in causing harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion?

☒ No      ☐ Yes

If "Yes," describe in detail each such incident and your own, your spouse's, or your child(ren)'s involvement.

## Part C. Additional Information About Your Application (Continued)

**4.** After you left the country where you were harmed or fear harm, did you return to that country?

☐ No          ☒ Yes

If "Yes," describe in detail the circumstances of your visit(s) (for example, the date(s) of the trip(s), the purpose(s) of the trip(s), and the length of time you remained in that country for the visit(s).)

after i left syria to work in Qatar,  i have gone back to visit my family in Syria 6-7 times. The last time i visited Syria was in May 2015 where i was arrested and almost did not make it out. I have not gone back since.

**5.** Are you filing this application more than 1 year after your last arrival in the United States?

☒ No          ☐ Yes

If "Yes," explain why you did not file within the first year after you arrived. You must be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question, see Instructions, Part 1: Filing Instructions, Section V. "Completing the Form," Part C.

**6.** Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted, or sentenced for any crimes in the United States?

☒ No          ☐ Yes

If "Yes," for each instance, specify in your response: what occurred and the circumstances, dates, length of sentence received, location, the duration of the detention or imprisonment, reason(s) for the detention or conviction, any formal charges that were lodged against you or your relatives included in your application, and the reason(s) for release. Attach documents referring to these incidents, if they are available, or an explanation of why documents are not available.

9

## Part D. Your Signature

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546(a), provides in part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned for up to 25 years. I authorize the release of any information from my immigration record that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

> Staple your photograph here or the photograph of the family member to be included on the extra copy of the application submitted for that person.

**WARNING:** Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an immigration judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. You may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. If filing with USCIS, unexcused failure to appear for an appointment to provide biometrics (such as fingerprints) and your biographical information within the time allowed may result in an asylum officer dismissing your asylum application or referring it to an immigration judge. Failure without good cause to provide DHS with biometrics or other biographical information while in removal proceedings may result in your application being found abandoned by the immigration judge. See sections 208.10, 1208.10, 208.20, 1003.47(d) and 1208.20.

| Print your complete name. | Write your name in your native alphabet. |
|---|---|
| Majd                    OBEID | مجد عبيد |

Did your spouse, parent, or child(ren) assist you in completing this application?  ☒ No  ☐ Yes *(If "Yes," list the name and relationship.)*

_____          _____          _____          _____
*(Name)*                                  *(Relationship)*                         *(Name)*                                  *(Relationship)*

Did someone other than your spouse, parent, or child(ren) prepare this application?   ☐ No  ☒ Yes *(If "Yes," complete Part E.)*

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim?   ☐ No  ☒ Yes

Signature of Applicant *(The person in Part A.I.)*

[          _____signature_____          ]                    Date *(mm/dd/yyyy)*   12/12/2015
Sign your name so it all appears within the brackets

## Part E. Declaration of Person Preparing Form, if Other Than Applicant, Spouse, Parent, or Child

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant, and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a).

| Signature of Preparer | Print Complete Name of Preparer |
|---|---|
|  | Ali Golchin |
|  | GOLCHIN & ASSOCIATES APC |

| Daytime Telephone Number | Address of Preparer: Street Number and Name |
|---|---|
| 619-827-8777 | 1251 Third Avenue |

| Apt. Number | City | State | Zip Code |
|---|---|---|---|
| # 203 | Chula Vista | CA | 91911 |

## Part F. To Be Completed at Asylum Interview, if Applicable

**NOTE:** *You will be asked to complete this part when you appear for examination before an asylum officer of the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered to were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

_____                    _____
Signature of Applicant                                               Date *(mm/dd/yyyy)*

_____                    _____
Write Your Name in Your Native Alphabet                  Signature of Asylum Officer

## Part G. To Be Completed at Removal Hearing, if Applicable

**NOTE:** *You will be asked to complete this Part when you appear before an immigration judge of the U.S. Department of Justice, Executive Office for Immigration Review (EOIR), for a hearing.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered to were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

_____                    _____
Signature of Applicant                                               Date *(mm/dd/yyyy)*

_____                    _____
Write Your Name in Your Native Alphabet                  Signature of Immigration Judge

Supplement B, Form I-589

**Additional Information About Your Claim to Asylum**

| A-Number *(if available)* | Date |
| --- | --- |
| | 12/11/2015 |
| Applicant's Name<br>Majd          OBEID | Applicant's Signature |

**NOTE:** *Use this as a continuation page for any additional information requested. Copy and complete as needed.*

Part     A.III.

Question     1

| Number and Street | City/Town | Department/Providence/State | Country | Dates<br>From (Mo/yr) - To (Mo/yr) |
| --- | --- | --- | --- | --- |
| Al Aziziya<br>BIA Mahmoud Carrefour | Doha | Qatar | Qatar | 2009 - 2010 |
| Accomodation | Doha | Qatar | Qatar | 2008 - 2009 |
| Musheireb | Doha | Qatar | Qatar | 2006 - 2008 |
| Al Khazas | Damascus | Damascus | Syria | 1988 - 2006 |

Part: A.III.
Question: 5

| Full Name | City/Town and country of Birth | Current Location |
| --- | --- | --- |
| Hadea M. Obeid | Damascus, Syria | Damascus, Syria |

Declaration of Majd Mohi Eddin Obeid:

1. My name is Majd Mohi Eddin Obeid. I am a native and citizen of Syria. I have no permanent legal status anywhere except Syria. I am 27 years old. Since January 28, 2010, I have been married to Mary Jane Ibatuan Ty.

2. I left Syria in October 2006 when I was 18 years old to avoid serving in the compulsory military service in the corrupt Syrian Army. Many of my friends who were serving were telling me horror stories of soldiers dying during training and having to bribe the generals to keeping you alive and to give you a leave to see your family.

3. The Army paid very little and was not enough for me to make a living without my parent's support. So instead I went to go to work in Qatar on a work visa and worked there to support myself and my family. My family needed help to pay the medical bills of my ill mother. In Qatar I worked and sent money back to Syria to help my family. In 2008, my father passed away and my family needed my financial help more than ever specially for my mother's health maintenance. I worked on tips by working in a restaurant in Qatar.

4. Later, I got a better job and then I met my wife Mary Jane Ibatuan Ty and in 2010 we got married. In 2011 we decide to go to Syria together to see my family and at the same time to pay $5000.00 penalty for not dong military service. The war in Syria had already started when we were there. I was so fearful for my wife's safety. She is not a Syrian and is from the Philippines.

5. As soon as we arrived in Syria, the agents questioned my wife and started to check our belongings. The agents wanted money or our cell phones before they would allow us to leave the airport. They had no respect for women. We went to a lot of check points every time we went out and had to give bribes to the police to be safe and so that they would let us go. Terrible corruption everywhere.

6. I learned that even with the $5000.00 fine I had paid for my military exemption, because of the war, I could still be forced into the military. I saw so many young men in handcuffs being brought to the military office. My brother was able to arrange for me the pay the penalty and was allowed to leave for Qatar. In Qatar, I did everything I could to bring my family out of Syria. Because of the war, the Qatar government made visas hard to get for the Syrians.

7. Starting in 2012 many places near our house in Syria was bombed. My family was scared.

13

Slowly all the houses around our house were destroyed by the bombs. My mother and brother had to leave the house and live from house to house to survive.

8. The houses of my two sisters in the city of Al Seida Zeynab were destroyed by bombs and all of us felt hopeless. I could not help them and they could not leave. For safety and out of necessity, my mother and siblings all moved into one house together.

9. Soon after, my sister and her family had to move to Libya to escape war in Syria. But soon there too war started. She then had to escape to Turkey and then to Germany. Her husband had to go to Denmark and her son to Sweden to escape war in Syria and Libya.

10. I can't imagine what is happening to my family now we are already separated and far from each other and my mother scared for me to go back to Syria during the war especially because of what happen to me during my last visit to Syria in May 2015.

11. While I was visiting my sick mother, the Syrian agents arrested me, blindfolded me and took me to jail. The wanted to force me to join the Army. I kept insisting that I was exempt and had paid the fine. They would not believe me and they transferred me to another station. I didn't know if such a place and such horrible condition could exist. But at that jail I saw people naked and wounded bleeding on the floor and dying with many other dead bodies.

12. The police wanted another $5000.00 bribe to let go. Because my family did not have it, they went to our house and took my brother and another relative to force them into the Army. My brother faced so much hardship in jail and almost died there. Finally my family showed them my army exemption papers and they let me go.

13. After I was released, I went home to see my mother and she made me to promise her to leave Syria and not come back during this horrible war.

14. During my last visit May 2015, my sister, and brother, and I drove to salvage my sister's house that was bombed Al Seida Zeynab to see what is left. We got a permit to enter the area be able to get though the numerous check points. We looked but didn't find anything useful at her bombed house. Furniture, appliances and everything that can be used were all destroyed or stolen.

15. When we were done checking on her house we drove back to her new temporary house. We were stopped on the way a Shiite militia group. They had patches on their uniforms which are written Fadhul Abu Al Abbas and Hassib Allah. They ask again for our permits to visit the area and we showed them. They ask everyone to get off the car and they searched the car

14

and also body frisks my brother. They let my brother and I go and we got in the car but they asked my sister to stay out of the car and walk toward them. They then started to touch her body by force and when she refused to let them touch her, they grabbed her arm tightly. She started to shout. My brother and I tried to get out of the car to go help her but two uniformed militia men with guns blocked our door. I argued with them and shouted and tried to get out and pushed the guy standing in the car window.

16. I yelled at them to let her go. My sister was fighting back and was able to escape and ran inside the car. When she got in, I started to drive away but was blocked by the two armed militia men and they were pointing their gun at me. I was afraid but was angry and feared that my sister's safety and family honor was at stake. I started to drive away and might have hit them with the side mirrors of the case. I feared they might shoot me but did not care and just wanted to get my sister to safety.

17. After I dropped my sister to her temporary house, I drove and stayed at my friend's house. I feared they might come after me to retaliate for what i did. They had seen my permit and my ID at the check point and it was only a matter of time before they would find me. I stayed at my friend until was able to get the first flight out of Syria going to Qatar.

18. The militia men come in the house the same day looking for me; they wanted me to pay for what i did to them and to his two men. They took my eldest brother Hiyas with them. Again my family tried to find where is he and what place they bring took him. There is no government to help us and that Shiite group, Fadul Abu Al Abbas have their own offices and jail that no one can enter. I left Syria. Two months later there looking for my brother, one day he came home beaten almost dying, injured and suffered from bone damage. My bother suffered a lot. He is in shock until now he barely talks. They told my brother that if I ever return to Syria, they will kill me for what I did to their men.

19. I read that this militia group has grown so much and are almost everywhere in Syria. They want all the Muslim Sunnis to also join them by force and they are getting bigger and stronger now and forcing people and kill.

20. After all what happen to my sister, I knew that my Filipina wife will not be safe in Syria. I have a friend his wife who is also a Filipina traveled to Syria in 2012. Her husband is Karam, a Syrian. His Filipina gave birth to their son in Syria. She did not want to leave the house because she was humiliated when she went out. Every time she went out, she was

15

questioned by the people and the soldiers. They questioned her motive for being in Syria and questioned her conversion to Islam. They even dared to humiliate her about what religion her baby belonged and whether she was virgin when she married Karim. She was discriminated against and harassed at checkpoints. A few times they removed her head cover because she not speaks Arabic and they didn't believe that she's a Muslim.

21. By 2013 they left Syria because they feared for the safety of the Filipina wife and their mixed baby.

22. There is no safe place in Syria for me and my Filipina wife. When even the Muslims are not safe there, what chances do we have to survive?

23. I would like to ask for the protection of the U.S.

I declare under the penalty of perjury that my statement above it true and correct to the best of my knowledge and ability.

Dated: 17/12/2015

Majd Mohi Eddin Obeid

16

**EXHIBIT B**



# Alien's Change of Address Card

### Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS**
**Form AR-11**
OMB No. 1615-0007
Expires 03/31/2021

**NOTE:** An asterisk (*) indicates a mandatory field that must be completed.

## Information About You

*Family Name (Last Name)
OBEID

*Given Name (First Name)
MAJD

Middle Name (if applicable)

I am in the United States as a: ☐ Visitor ☐ Student ☐ Permanent Resident ☒ Other (Specify) PENDING ASYLUM

Country of Citizenship
SYRIA

*Date of Birth (mm/dd/yyyy)
01/11/1988

Alien Registration Number (A-Number) (if any)
► A- | 2 | 0 | 8 | 7 | 3 | 2 | 6 | 3 | 4 |

## Information About Your Address

*Present Physical Address (No PO Boxes)

*Street Number and Name
1379 E HAWK WAY

Apt. Ste. Flr. ☐ ☐ ☐    Number

*City or Town
EAGLE MOUNTAIN

*State
UT

*ZIP Code
84005

Previous Physical Address

Street Number and Name

Apt. Ste. Flr. ☐ ☐ ☐    Number

City or Town

State

ZIP Code

Mailing Address (optional)

Street Number and Name
1379 E HAWK WAY

Apt. Ste. Flr. ☐ ☐ ☐    Number

City or Town
EAGLE MOUNTAIN

State
UT

ZIP Code
84005

## Your Signature

*Your Signature

Date of Signature (mm/dd/yyyy)
01/22/2021

Form AR-11   09/10/19

Page 1 of 2

17

**EXHIBIT C**



**ABUSHARAR & ASSOCIATES**
IMMIGRATION LAW FIRM

January 25, 2021

**Via Certified Mail**
USCIS – Asylum
Houston Asylum Office
16630 Imperial Valley Drive, Suite 200
Houston, TX 77060

RE:                                         OBEID, Majd                A 208 732 634

SUBJECT:                          **I-589: Applicant's Brief in Support of Asylum,
                                            Withholding of Removal, Protection Under
                                            Convention Against Torture, and Submission of
                                            Supporting Documents**

Dear Officer,

     Our office represents the Applicant in the above referenced matter.   Mr. Obeid submitted
his asylum application, which was received and is pending as of December 21, 2015 (Receipt #
ZLA1500213390).

     Mr. Obeid is seeking asylum based on his Sunni Muslim religion, political opinion,
opposition to forced military conscription, and status as a refugee/returning asylum seeker.  He is
submitting his brief in support of his asylum application, Withholding of Removal and protection
under the Convention Against Torture.

Enclosed please find the following documents:

1. G-28 Notice of Entry of Appearance as Attorney
2. Brief in Support of Asylum, Withholding of Rem
   Against Torture;
3. Table of Contents;
4. Exhibits A-X.



501 N. BROOKHURST ST. STE #202
PHONE: (714) 535-5600 FAX:
EMAIL: INFO@ABUSHARARLAW.COM | AK



**ABUSHARAR
& ASSOCIATES**
IMMIGRATION LAW FIRM

If you have any questions or need any additional information, please do not hesitate to contact our office at (714) 535-5600.

Sincerely,

Akram Abusharar

19

Akram Abusharar, Esq.
ABUSHARAR & ASSOCIATES
501 North Brookhurst Street, Suite 202
Anaheim, California 92801
T: 714-535-5600
F: 714-535-5605
E: akram@abushararlaw.com

## DEPARTMENT OF HOMELAND SECURITY

## UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES

In the matter of

OBEID, Majd

               Applicant

A 208 732 634

## APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE, AND SUBMISSION OF SUPPORTING DOCUMENTS

20

Applicant, Majd Obeid, ("Applicant"), through undersigned Counsel, submits this brief in support of his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

## I.     STATEMENT OF FACT

Applicant is a 33-year-old Syrian and a Sunni Muslim. He was born in Damascus, Syria.

Applicant is afraid to return to Syria because of his Sunni Muslim religion, political opinion, status as a refugee/asylum seeker, and his opposition to forced military conscription. He is afraid of being detained, interrogated, disappeared, imprisoned, tortured and killed upon stepping foot in Syria, by the Syrian government regime, as well as armed Shiite militia groups that support the Syrian regime.

Applicant fears returning to Syria because of his Sunni Muslim religion. The Alawi controlled Syrian regime has targeted, kidnapped, discriminated, and persecuted Sunnis since the beginning of the civil war. Shiite militant groups, such as Fadul Abu Al Abbas, want Sunni Muslims to join them and use force to recruit them. Fadul Abu Al Abbas have their own offices and jails in Syria that no one can enter. The Syrian government cannot and will not help because the militant group fights for the government. Sunnis are prevented from practicing their religion. The Shiite militias are supporting the Assad regime and they are sending him troops. Shias are being allowed to buy up Sunni property and forcing Sunni residents to leave or be killed.

Applicant fears returning to Syria because of his political opinion. He does not agree with the political views of the Assad regime, nor does he agree with the views of the corrupt Syrian army. The regime targets individuals who peacefully oppose them and detain, imprison, disappear, torture and kill them for their political dissidence and opposing views. [**Exhibit C-E, G-J, M, N**].

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

2

21

Applicant fears returning to Syria because he will be targeted for persecution by the Syrian government because he is a refugee and returning asylum seeker. The Syrian regime views returning refugees and asylum seekers as traitors to the country. **[Exhibit H, J-M]**. Applicant fears being immediately detained, arrested, interrogated, tortured and or killed upon stepping foot in Syria.

Applicant fears returning to Syria because he is opposed to forced military conscription. He refuses to harm or kill innocent civilians in the ongoing armed conflict in Syria. He fears he will be forced to join the Syrian regime military and thrown in the front lines to die or to commit war crimes and atrocities as the Syrian military has done throughout its civil war. **[Exhibit O- S, U]**. If he were forcibly conscripted into the Syrian military, he would refuse to fight and he would face torture and death because he opposes forced military conscription.

In October 2006, when Applicant was 18-years-old, he left Syria to avoid serving in the compulsory military service in the corrupt Syrian army. Many of his friends who were serving told him horror stories of soldiers dying during training and having to bribe the generals to keep them alive and to give them leave to see their families.

Applicant went to Qatar on a work visa and worked there to support himself and his family. He met his wife in Qatar and in 2010 they got married. In 2011, they decided to go to Syria to see Applicant's family and to pay a $5,000.00 penalty for not completing compulsory military service. At this time the civil war in Syria had already began. As soon as they arrived in Syria, security agents interrogated his wife and searched their belongings. The agents wanted money or their cell phones before they would allow them to leave the airport. They passed through many checkpoints every time they went out in Syria. Police at checkpoints demanded bribes for safe passage. There is terrible corruption everywhere in Syria.

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

3

22

Applicant paid his $5,000.00 fine for his military exemption but found out that because of the war, he could still be forced into the military even though he paid the exemption fee. He saw many young men in handcuffs being brought to the military office. Applicant's brother, Ferras Obid, helped Applicant to leave Syria and go back to Qatar. While in Qatar Applicant did everything he could to get his family out of Syria. Because of the war, the Qatar government made visas hard to get for Syrians.

The houses of Applicant's two sisters, Lina Obid and Lamis Obid, in the city of al-Seida Zeynab were destroyed by bombs. For safety, and out of necessity, Applicant's mother and siblings all moved into one house. Soon after this, one of Applicant's sisters, Lina, and her family were able to escape Syria and move to Libya. However, war started in Libya, so she escaped to Turkey and then eventually to Germany. Her husband had to go to Denmark and her son to Sweden to escape war in Syria and Libya.

Applicant's nephew, Noor Al Kurdi, was jailed because he refused to serve any longer in the Syrian army. While serving in Homs he was deployed to deal with protesting and was ordered to fire on civilians in the protest. He refused and was jailed. He was imprisoned for 4 years and tortured during that time. When he was released, he had mental health issues and is not mentally stable. The army still wanted him to serve even though he has mental issues. He is currently treating with doctors.

In May 2015, Applicant returned to Syria to visit his sick mother. He was immediately arrested by Syrian security agents. They blindfolded him and took him to jail. They wanted to force him to join the army. Applicant told them he was exempt and had paid his fine. They did not believe him and transferred him to another police station. At that jail, Applicant witnessed people naked and wounded, bleeding on the floor and dying, with many other dead bodies

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

4

23

around. The police wanted another $5,000.00 bribe to let Applicant go. Because his family did not have it, the police went to their home and took Applicant's brother, Ferras Obid, to force him into the army. His brother faced tremendous hardship in jail and almost died there.

When Applicant was released, he went to see his mother and she made him promise her to leave Syria and not come back. Also during this visit, Applicant's sister, Lamis, Applicant's brother, Ferras, and Applicant drove to al-Seida Zeynab to salvage what was left of her house that was bombed. They obtained a permit to enter through the numerous check points they had to pass to enter the area. There was nothing useful to salvage. The furniture, appliances, and everything of use were all destroyed or stolen.

After checking on the house, they drove back to her temporary home. They were stopped on the way by a Shiite militia group. The group had patches on their uniforms that identified them as Fadhul Abu Al Abbas and Hezbollah. They asked for their permits and told Applicant and his siblings to get out of the car so they could search it. They let Applicant and his brother go but told their sister to go with them. They started to touch her body by force and when she refused to let them touch her, they grabbed her arm tightly, and she began to shout. Applicant and his brother tried to help but two uniformed militia men with guns blocked their doors. Applicant argued with them, shouted and tried to get out. He pushed one of the men standing at the car window.

Applicant's sister was able to fight them off and escape back to the car. Applicant tried to drive off but was blocked by two armed militia men who were pointing their guns at him. He was afraid and angry, but also feared for his sister's safety. Applicant started to drive away and feared they might shoot him, but he did not care because he just wanted to get his sister to safety. After he dropped off his sister at her temporary home, Applicant drove and stayed with a friend.

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE

5

24

He feared the militia men would come for him to retaliate for what he had done. They had seen Applicant's permit and identification at the checkpoint, and it was only a matter of time before they would find him. Applicant stayed with his friend until he was able to get the first flight out of Syria to Qatar.

The militia men went looking for Applicant the same day. They wanted him to pay for what had happened. They took Applicant's eldest brother, Hiyas, with them. Applicant's family tried to find where they had taken him. Two months later, his brother came back home beaten and almost dead. He suffered injuries from bone damage. He is in shock until this day, and barely talks. They told Applicant's brother that if Applicant ever returned to Syria, they will kill him for what he had done.

Applicant's brother, Ferras, was conscripted into the Syrian army when he was 19. He served 2 ½ years and was let out of service. Then in 2018, government authorities went to his house and told him he had to serve again in the army. He refused because he had already fulfilled his service duties. Because of his refusal, he was arrested, imprisoned for 10 days, and was tortured. He was released only because Applicant paid for his release so that he would not have to serve.

In 2015, Applicant's uncle's son, escaped Syria and went to Sweden. He applied for asylum and was granted. He is applying for Swedish citizenship now. Also in 2015, Applicant's sister, Lina, escaped to Germany and applied for asylum. She has received permanent status there. Applicant has two sisters and two brothers still living in Syria. Applicant has been told that there are no jobs and there is very little money for food. They cannot leave Syria now because the borders are closed. Applicant's mother is still in Syria, living with Applicant's two

25

country; (B) there is a reasonable possibility of suffering such persecution; and (C) she is unable or unwilling to return to that country because of such fear. See 8 C.F.R. § 1208.13(b)(2)(i). A "'well-founded fear' ... can only be given concrete meaning through a process of case-by-case adjudication." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987).

Such a fear must be both subjectively genuine and objectively reasonable. *Wiransane v. Ashcroft*, 366 F.3d 889 (10th Cir.2004). An asylum applicant has an objectively well-founded fear of persecution if (1) she may be singled out for persecution upon returning to her country of origin, or (2) "there is a pattern or practice in [that] country . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion," and the applicant belongs to and identifies with that group. 8 C.F.R. § 208.13(b)(2)(iii); see also *Wiransane*, 366 F.3d at 893; *Woldemeskel v. INS*, 257 F.3d 1185, 1190 (10th Cir.2001). An applicant premising his claim on "a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Karki v. Holder*, 715 F.3d 792, 801 (10th Cir. 2013) (quoting Estrada-Escobar v. Ashcroft, 376 F.3d 1042, 1046 (10th Cir. 2004)).

### a. Applicant's Fears are Subjectively Genuine.

Applicant can provide credible testimony regarding his well-founded fear, thus, his fears are genuine.

### b. Applicant's Fears are Objectively Reasonable. '

Aliens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct,

26

brothers in Damascus. Both his sisters live in Damascus as well. He has cousins who have also fled Syria and went to Jordan.

Applicant fears for the life of his Filipina wife if they are forced to return to Syria. He has a friend named Karim whose wife is also Filipina. In 2012 they traveled to Syria. His wife gave birth to their son in Syria. She did not want to leave the house because she was humiliated when she went out. Every time, she was questioned by people as well as soldiers about her motives for being in Syria and for her conversion to Islam. They humiliated her by questioning the religion of their child and whether she was a virgin when she married Karim. She was discriminated against and harassed at checkpoints. A few times they removed her head cover because she does not speak Arabic and they did not believe she is Muslim. By 2013, they left Syria because they feared for the safety of his wife and mixed child. Applicant fears that this will happen to his wife in Syria, or worse.

In 2014, Applicant visited the Philippines on a visitor visa. Permanent residency is not available to Syrian nationals. [**Exhibit W, X**]. He was informed that if he over stayed his visa, he would have to pay. In 2015, Applicant was in Qatar before coming to the United States. He left Qatar because Syrians were no longer welcomed there. In addition, there was no job advancement opportunities for him. He could not renew his working visa every year.

Applicant is currently financially supporting his family in Syria because there are no jobs available. His family wants to get out of Syria, but it is difficult. Applicant is sending financial support so that his family is able to survive on a daily basis. There is no safe place for Applicant and his wife to go in Syria. He requests the protection of the United States and prays that his asylum application is granted.

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE

27

## II.    ARGUMENT

### A.  Applicant Was Not Firmly Resettled in Any Other Country

An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she establishes:

(a) That his or her entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country; or

(b) That the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled. In making his or her determination, the asylum officer or immigration judge shall consider the conditions under which other residents of the country live; the type of housing, whether permanent or temporary, made available to the refugee; the types and extent of employment available to the refugee; and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation that includes a right of entry or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country. 8 C.F.R. § 208.15.

Applicant lived and worked in Qatar on a work visa.  He had to leave Qatar in 2015 because Syrian nationals were no longer welcome in the country.  There were no job advancement opportunities for Applicant in Qatar and he could not renew his working visa every year.

In 2014, Applicant visited the Philippines on a visitor visa.  Although his wife is a Philippine national, permanent residency is not available to Syrian nationals.  [**Exhibit W, X**].

Applicant was never offered permanent resident status, citizenship, or some other type of permanent resettlement in either Qatar or the Philippines, and therefore, was never firmly resettled in either of those countries.

28

## B. Applicant is Eligible for Asylum

In order to qualify for asylum, applicant must show that he is a "refugee," defined as someone who is unable or unwilling to return to his or her home country due to past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §1158(b)(1); §1101(a)(42)(A);

The INA defines "refugee" as one who is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ." 8 U.S.C. § 1101(a)(42)(A).   Thus, asylum involves a two stage process: first, the immigration authorities determine statutory eligibility based on the "well-founded fear of persecution" standard; and second, if statutory eligibility is established, the Attorney General has discretion either to grant or to deny the alien's request for asylum. 8 U.S.C. § 1158(a).  The term refugee is defined as:

> Any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . .  8 U.S.C. § 1101(a)(42)(A).

In order to qualify as a refugee and be eligible for asylum, an applicant must demonstrate that he or she has either (a) suffered past persecution or (b) has a well-founded fear of future persecution on account of one of the five statutorily enumerated grounds.  8 C.F.R. § 1208.13.

## 1. Applicant Has A Well-Founded Fear of Persecution

Even in the absence of past persecution, an applicant may be eligible for asylum based on a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b).  An applicant can demonstrate a well-founded fear of persecution if: (A) she has a fear of persecution in her

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE

29

and specific evidence in the record, of facts that would support a reasonable fear of persecution."
*Wiransane v. Ashcroft*, 366 F.3d 889 (10th Cir.2004).

Here, Applicant can testify to the fact he and his wife have been interrogated by Syrian government authorities. He has been arrested by Syrian security agents wanting to force him into military service. Applicant's brother, Ferras, has been arrested, imprisoned and tortured because he already served in the military and refused to serve in the military again. His brother, Hiyas, was taken by militia men, beaten and almost left for dead. Hiyas suffered bone damage, is in shock to this day because of his experiences, and barely talks. The militia men told him that if Applicant ever returned to Syria, they would kill him. Applicant's sister, Limas, has lost her home due to bombing and militia men have sexually assaulted her. Applicant's nephew, Noor, was jailed because he refused to serve any longer in the Syrian army. He was ordered to fire on innocent civilians. When he refused, he was imprisoned for four years and tortured during that time. When he was released he had mental health issues and is not mentally stable. The army still wanted him to serve even though he has mental health issues. He is currently treating with doctors. The house of Applicant's sister, Lina, was also destroyed by bombs. Applicant's family has suffered harm rising to the level of persecution, at the hands of the Syrian regime. **[Exhibit A]**.

According to SNHR, "The Continuing Gross Violations and Failure of Political Transition Devastate What Remains of Syria and Prevent Refugees from Returning." **[Exhibit C]**. "The report documents the deaths of 1,734 civilians, including 326 children and 169 women (adult female), in 2020, with the highest percentage of killings being carried out at the hands of other parties." **[*Id*]**. "The report documents at least 1,882 cases of arbitrary arrest/ detention in 2020 at the hands of the parties to the conflict and the controlling forces, including 17 children

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

30

and 23 women (adult female), with the largest percentage of these carried out by Syrian Regime forces in the governorates of Daraa, Damascus Suburbs, then Aleppo." *[Id]*.

SNHR further reports that "Many types of violations practiced by the Syrian authorities can now be classified as crimes against humanity; that is, they have become widespread and comprehensive, and are used as standard strategy by a calculated decision on the regime leadership's part to deliberately practice these violations to push Syrian society to end their demands for the change of rule of the Assad family, and to acquiescence and surrender to the regime's tyranny." **[Exhibit J]**.

According to Amnesty International, "Amnesty International's investigation into attacks detailed in this report has led it to conclude that Syrian and Russian government forces have been **responsible for serious violations of international humanitarian law** in north-west Syria by intentionally directing attacks against civilians and civilian objects such as hospitals and schools, failing to distinguish between civilians and fighters, and using prohibited weapons in attacks that killed or injured civilians. **These violations constitute war crimes.** They are also part of a well-**established pattern of Syrian government forces targeting civilians, medical facilities, schools, homes and other civilian infrastructure** in areas controlled by opposition forces. These prohibited acts have been **systematically carried out by the government in Idlib, Aleppo and other governorates in Syria, including Damascus Countryside, Daraa and Homs, in furtherance of the state's policy to punish civilians in opposition-held areas.** [**Exhibit D**].

The U.S Department of State reports that "Syrian and Russian airstrikes repeatedly struck civilian sites, including hospitals, markets, schools, and farms, many of which were included in UN deconfliction lists." **[Exhibit E]**. "The regime took no steps to identify, investigate,

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

12

31

prosecute, or punish officials who committed human rights violations or abuses. Impunity was pervasive and deeply embedded in the security and intelligence forces and elsewhere in the regime." [*Id*]. "The most egregious human rights violations and abuses stemmed from the regime's systemic disregard for the safety and well-being of its people." [*Id*].

According to Reuters, "The Netherlands is preparing a case against Syria at the U.N.'s highest court, seeking to hold the government of President Bashar al-Assad accountable for human rights violations, including torture and the use of chemical weapons,…" [**Exhibit G**]. "The Assad regime has committed horrific crimes time after time. The evidence is overwhelming. There must be consequences," the letter said. "Large numbers of Syrians have been tortured, murdered, forcibly disappeared, and subjected to poison-gas attacks, or have lost everything fleeing for their lives." [*Id*].

AlJazeera reports that "Syrians should not be forced to return to an unsafe Syria." [**Exhibit H**]. "The premature repatriation of displaced Syrians could cause further cycles of violence and suffering." [*Id*]. "The document, a signed copy of which any prospective returnee must submit to the Syrian embassy at the host country, speaks of refugees as "Syrians who left the country illegally". Signing it amounts to a confession of having committed a legal violation." [*Id*].

According to UN News, "Calling the deteriorating situation "a ticking time-bomb that must not be ignored", UN High Commissioner for Human Rights Michelle Bachelet lamented: "We are receiving more reports every day of targeted killings and bombings from one end of the country to the other, with many such attacks taking place in populated areas". [**Exhibit I**]. "Last month, improvised explosive devices (IEDs) took 35 civilian lives, according to the UN Human

32

Rights Office, compared to seven the previous month.  And since the start of March, residential neighbourhoods and markets have been targeted." [*Id*].

Human Rights Watch reports that "Syrian intelligence branches are arbitrarily detaining, disappearing, and harassing people in areas retaken from anti-government groups, Human Rights Watch said today. The abuse is taking place even when the government has entered into reconciliation agreements with the people involved." [**Exhibit L**].  "Human Rights Watch interviewed 16 former residents of Daraa and Quneitra governorates, Eastern Ghouta, and towns in southern Damascus. They said that Syrian intelligence branches have detained and harassed people related to anti-government activists or former fighters, along with defectors, members of anti-government groups, or activists. Humanitarian workers, community leaders, and media activists who remained in government-held areas were also detained and harassed.  People have been arrested in their homes and offices, at checkpoints and in the streets, relatives and witnesses said." [*Id*].

Middle East Monitor reports that "A total of 14,423 people are documented as having been tortured to death since the start of the ongoing Syrian civil war in 2011, a UK-based human rights group has revealed. More 98 per cent of the victims were killed by the regime of President Bashar Al-Assad." [**Exhibit V**].  "According to the Syrian Network for Human Rights, all of the main parties in the Syrian conflict are guilty of torture and human rights violations. However, the Assad regime is by far the worst culprit, killing at least 14,249 people through the use of extensive torture." [*Id*].

Applicant has shown both a genuine, subjective fear of persecution, and an objective basis by providing credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution.  [**Exhibit C-X**].

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE

33

### c. Pattern and Practice of Persecution

An applicant need not show that she will be singled out individually for persecution if: (A) The applicant establishes that there is a pattern or practice in his or her country ... of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and (B) The applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable. 8 C.F.R. § 1208.13(b)(2)(iii).

Based on Applicant's testimony and country condition reports, he need not show that he will be singled out individually for persecution because he has established that there is a pattern and practice in Syria of persecution of a group of persons similarly situated to the Applicant on account of the enumerated grounds. Country condition reports confirm that that Syrian regime persecutes Sunni Muslims [**Exhibit F**], returning refugees/asylum seekers [**Exhibit C-E, H, J, K, T**], political dissidents [**Exhibit C-E, G, M, N, V**], and those opposed to forced military conscription [**Exhibit J, O-S, U**].

Applicant has established his inclusion in, and identification with, such groups of persons such that his fear of persecution upon return to Syria is reasonable.

### d. Countrywide Persecution.

"An applicant is ineligible for asylum if the evidence establishes that 'the applicant could avoid persecution by relocating to another part of the applicant's country of nationality ... if under all the circumstances it would be reasonable to expect the applicant to do so.'" *Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004) (quoting 8 C.F.R. § 1208.13(b)(2)(ii)).

"In cases in which the persecutor is a government or is government sponsored, ... it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

15

34

preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate." 8 C.F.R. § 1208.13(b)(3)(ii); *see also Fakhry v. Mukasey*, 524 F.3d 1057, 1065 (9th Cir. 2008).

Based on country condition reports, it should be presumed that internal relocation would not be reasonable because the persecutor is the Syrian government regime. **[Exhibit C-V]**.

## 2. <u>Nexus to Protected Ground</u>

For applications filed on or after May 11, 2005, the REAL ID Act of 2005, Pub. L. No. 109-113, 119 Stat. 231, created a new nexus standard, requiring that an applicant establish that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added).

> [A] motive is a "central reason" if the persecutor would not have harmed the applicant if such motive did not exist. Likewise, a motive is a "central reason" if that motive, standing alone, would have led the persecutor to harm the applicant. ... [P]ersecution may be caused by more than one central reason, and an asylum applicant need not prove which reason was dominant. Nevertheless, to demonstrate that a protected ground was "at least one central reason" for persecution, an applicant must prove that such ground was a cause of the persecutors' acts. *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009); *see also BringasRodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc) (post-REAL ID Act).

The persecutor's motivation may be established by direct or circumstantial evidence. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

## a. **Applicant's Well-Founded Fear is on Account of His Sunni Muslim Religion.**

Persecution on the basis of religion may assume various forms, including: prohibition of membership of a religious community, or worship in private or in public, of religious instruction, or serious measures of discrimination imposed on persons because they practise their religion or belong to a particular religious community. Handbook and Guidelines on Procedures and Criteria

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE

35

for Determining Refugee Status, U.N. Doc. HCR/IP/4/Eng./REV.3 (ed. 2011) ("UNHCR Handbook"), para. 72.

"The Universal Declaration of Human Rights and the Human Rights Covenant proclaim the right to freedom of thought, conscience, and religion, which right includes the freedom of a person to change his religion and his freedom to manifest it in public or private, in teaching, practice, worship and observance." UNHCR Handbook, para. 71.

Sunni Muslims are drafted into the Syrian army and sent to the front lines with minimal training to die on the front lines or commit war atrocities and crimes against humanity. Sunni Muslims, such as Applicant, have been heavily targeted for persecution by the Syrian government regime.

The U.S. Department of State reports that "According to media and NGO sources, the government continued its widespread and systematic use of unlawful killings, including through the repeated use of chemical weapons, persistent attacks on civilians and civilian infrastructure, enforced disappearances, torture, and arbitrary detention to punish perceived opponents, including civilians, the **majority of whom were Sunni Muslims.**" **[Exhibit F]**. "The government continued to monitor sermons, close mosques between prayer times, and limit the activities of religious groups, and to state the armed resistance comprised "extremists" and "terrorists."" **[Id]**. " There were continued reports that the war waged by the Alawi-dominated government against opposition forces and terrorist groups resulted in significant casualties among the **majority Sunni population.** According to SNHR, the civilian death toll during the year was 3,364, of which more than half was at the hands of the government and its allies. The COI stated **Sunnis accounted for a majority of civilian casualties and detainees.**" **[Id]**.

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE
17

36

"Human rights organizations and civil society groups continued to report the **government arbitrarily detained tens of thousands of citizens, mainly Sunnis**, with the support of Iranian Shia forces militias, without due process." [*Id*]. "During the year, government forces were reportedly responsible for 275 deaths by torture. As was the case with others who previously died in government custody, the vast **majority were Sunni Muslims**, whom analysts stated the government targeted believing they were members of the opposition, or likely to support the opposition." [*Id*]. "Amnesty International estimated during the year that **thousands of citizens, mostly Sunni Muslims, remained missing.**" [*Id*]. "The COI, SNHR, and human rights activists reported government-affiliated forces and militias continued to seize the homes of Sunnis with the explicit intention of permanently displacing these individuals and thus altering the demographics of areas held by the government." [*Id*]. "According to multiple press reports and human rights organizations, the **vast majority of refugees and displaced were Sunni** and were viewed with suspicion by the government." [*Id*].

Applicant's Sunni Muslim religion is one central reason for his well-founded fear of persecution.

b.   **Applicant's Well-Founded Fear is on Account of His Political Opinion.**

Applicant fears returning to Syria because of his political opinion. Applicant does not agree with the political views of the Assad regime, nor does he agree with the views of the corrupt Syrian army. The regime targets individuals who peacefully oppose them and detain, imprison, disappear, torture and kill them for their political dissidence and opposing views. [**Exhibit A, M, N**]. Country condition reports confirm that Applicant would face the prospect of persecution because he is a political dissident and opposes the regime's forced military conscription laws.

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE
18

According to the New York Times article entitled, 'Inside Syria's Secret Torture Prisons: How Bashar al-Assad Crushed Dissent', "As Syria's president, Bashar al-Assad, closes in on victory over an eight-year revolt, a secret, industrial-scale system of arbitrary arrests and torture prisons has been pivotal to his success. While the Syrian military, backed by Russia and Iran, fought armed rebels for territory, the government waged a ruthless war on civilians, throwing hundreds of thousands into filthy dungeons where thousands were tortured and killed." **[Exhibit M]**. "Nearly 128,000 have never emerged, and are presumed to be either dead or still in custody, according to the Syrian Network for Human Rights, an independent monitoring group that keeps the most rigorous tally. Nearly 14,000 were "killed under torture." Many prisoners die from conditions so dire that a United Nations investigation labeled the process "extermination." **[Id]**. "...newly discovered government memos show that Syrian officials who report directly to Mr. al-Assad ordered mass detentions and knew of atrocities...The prison system was integral to Mr. al-Assad's war effort, crushing the civil protest movement and driving the opposition into an armed conflict it could not win." **[Id]**.

AlJazeera reports that "In a lengthy report, the New York Times found that the rate at which people are being detained in the country is still increasing, despite Assad's military win in the bloody conflict – now in its ninth year." **[Exhibit N]**. __Methods of routine torture have been utilised as a tool to crack down on opposition and dissent__, and according to the Times, have been "critical" to Assad's military success in Syria." **[Id]**.

According to Enab Baladi, "Ismael, a young man from the al-Rastan city and a deserter of mandatory enlistment, spoke to Enab Baladi on the condition of anonymity for security reasons, about his hiding for fear of the most recent forced conscription campaign." **[Exhibit O]**. "He confirmed that the military police patrols set up their checkpoints randomly and in an

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

38

unpredictable way…The intense presence of the military police patrols increases the chances of arrest in young men who evade military conscription…A few months after the settlement, security measures were tightened in the area in many ways, most notably arrest campaigns, kidnapping operations, and forced enlistment in the military service." *[Id]*.

TIMEP Brief reports that **"The regime has taken a number of steps to make up for its gutted military including launching conscription campaigns, setting up checkpoints across the country to catch those avoiding conscription, arresting men for service, raiding homes to find individuals to forcibly conscript, issuing amnesties to entice deserters and draft dodgers to return."** **[Exhibit U]**. "During the war, the regime has kept some conscripts in the army despite the completion of their compulsory service." *[Id]*. "Furthermore, considering increasing reports that individuals who have been signing reconciliation agreements with the Syrian regime have been forcibly conscripted, or in other cases, arrested, tortured, assassinated, or killed, there are no assurances that returnees will be safe." *[Id]*.

In their article entitled 'Syrian Protest in Daraa Over Military Conscription", the Middle East Monitor reports that in Syria there is a "…campaign of arbitrary arrests and forced recruitment…after intelligence services threatened reprisals against them and their families if they did not present themselves for military service…residents still complain of conscription and rampant arrests…at least 132 people have been arrested since July; 26 died as a result of torture in detention." **[Exhibit R]**.

Based on the above, there is little doubt that Applicant faces a serious risk of persecution at the hands of the Syrian regime because of his political opinion. His opposition to the regime's politics and the forced conscription laws will motivate the Syrian government to persecute him.

39

[**Exhibit L-N, R, U**].  Applicant's political opinion is one central reason that he fears returning to Syria.

   c.  **Applicant's Well-Founded Fear is on Account of His Status as a Returning Refugee/Asylum Seeker, and Syrian Male Opposed to Forced Military Conscription.**

As discussed above and highlighted in the country condition reports, returning refugees/asylum seekers and Syrian males opposed to forced military conscription, face a serious and immediate risk of persecution at the hands of the Syrian government regime.  [**Exhibit D, H, J-V**].  These individuals are immediately arrested by security forces, are viewed as traitors, and are detained, interrogated, disappeared, beaten, tortured and killed by the regime [**Id**].

According to AlJazeera, "The premature repatriation of displaced Syrians could cause further cycles of violence and suffering."  [**Exhibit H**].  "Yet there seems to be growing support for the repatriation of large numbers of Syrians to regime-held areas without any real guarantees for their security or international presence to ensure their basic rights are respected. Such a scenario would almost certainly result in more violence and displacement."  [**Id**].

According to SNHR, "Many types of violations practiced by the Syrian authorities can now be classified as crimes against humanity; that is, they have become widespread and comprehensive, and are used as standard strategy by a calculated decision on the regime leadership's part to deliberately practice these violations to push Syrian society to end their demands for the change of rule of the Assad family, and to acquiescence and surrender to the regime's tyranny."  [**Exhibit J**].  "It should also be noted, however, that even after the Syrian regime released 1,132 of these returning refugees, it detained a number of them again, forcing them to join the military forces via enforced conscription."  [**Id**].  "**Detention of returnees has been concentrated directly at the border crossings, after returnees' names and passports**

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

21

40

**have been examined by regime personnel at these crossing points. Upon discovering that a returning individual is wanted by one of the security services, the security forces will arrest him/her immediately."** [*Id*]. "The most violent phase of this process which we have recorded is in the cases of arrests and enforced disappearances that occurred with refugees who had settled their security through consulates or committees as mentioned above, but who were nevertheless arrested, tortured and disappeared, which is a very common phenomenon at the hands of the Syrian Regime's brutal security services." [*Id*].

According to the Christian Science Monitor, "In recent months, refugees have been detained or disappeared since returning home." **[Exhibit K]**. "According to the London-based Syrian Observatory for Human Rights, more than 2,000 refugees have been detained since returning to Syria over the past two years. Activists say thousands more have disappeared from areas reclaimed by the regime." [*Id*].

Middle East Monitor reports that "Syrian Protest in Daraa Over Military Conscription… campaign of arbitrary arrests and forced recruitment… after intelligence services threatened reprisals against them and their families if they did not present themselves for military service… residents still complain of conscription and rampant arrests…at least 132 people have been arrested since July; 26 died as a result of torture in detention." **[Exhibit R]**. According to the New Arab, "Photo of Syrians in chains highlights horrors of regime's forced conscription…The photo has gone viral among Syrians with many saying the men were being forcibly conscripted into the army… But Damascus has continued to round up – or hunt down – potential recruits and forced them to join the military, where they serve on front lines in miserable conditions and often used as cannon fodder in battles against rebels… The regime has announced conscription

41

campaigns and nabbed young Syrians on the streets, and tried to humiliate them into serving on the army." [**Exhibit S**].

According to the Center for Migration Studies, "It documents the disappearance of at least 638 refugees after their forcible return to Syria." [**Exhibit T**]. "Many reports have highlighted the risks to forcible returnees in Syria. The regime of Bashar al-Assad now controls most of the country, but continues to pose a grave danger to refugees and IDPs. **It is pursuing retaliatory measures against many refugees as soon as they set foot in Syria.**" [*Id*]. "SNHR reports that **arrests of the returning refugees wanted by security forces occurred immediately "after the returnee's name and passport were examined," despite having been previously assured of a safe return by Syrian officials.**" [*Id*].

According to TIMEP, "The regime has taken a number of steps to make up for its gutted military including launching conscription campaigns, setting up checkpoints across the country to catch those avoiding conscription, arresting men for service, raiding homes to find individuals to forcibly conscript, issuing amnesties to entice deserters and draft dodgers to return, and releasing propaganda content…" [**Exhibit U**]. "During the war, the regime has kept some conscripts in the army despite the completion of their compulsory service." [*Id*].

Applicant's membership in these particular social groups are both central reasons that he fears returning to Syria.

C. **Applicant is Eligible For Withholding of Removal**

Pursuant to INA §241(b)(3), Applicant is eligible for withholding of removal. The applicant must show that her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §1231(b)(3); 8 C.F.R. §1208.16(b). The burden of proof for withholding is higher than asylum and requires

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE

42

more than a fifty percent chance of Applicant's persecution on account of one of the five enumerated grounds, if returned to her home country. 8 C.F.R. §208.16(b)(2). *See also, INS v. Stevic*, 467 U.S. 407 (1984).

As discussed above, based on the country condition reporting submitted with his asylum application and the credible testimony he can provide, Applicant can and will show that there is more than a clear probability that his life or freedom would be threatened on account of his religion, political opinion, opposition to forced military conscription, and status as a returning refugee/asylum seeker. **[Exhibit A-V]**. Applicant has met his burden based on his circumstances and current country conditions.

## D. Applicant is Eligible For Relief Under the Convention Against Torture

United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (hereinafter "CAT"), prohibits the United States from returning a person to their country of origin where there are "substantial grounds for believing that he would be in danger or being subjected to torture."

Torture is defined as: Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. 8 C.F.R. §1208.18(a)(1).

He can meet this burden by presenting "all evidence relevant to the possibility of future torture…including but not limited to…evidence of past torture inflicted upon the applicant; **evidence of gross, flagrant, or mass violations of human rights** within the country of removal, where applicable." 8 C.F.R. §1208.16(c)(3). The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. *See Kamalthas v. INS*, 251 F.3d

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL,
PROTECTION UNDER THE CONVENTION AGAINST TORTURE

43

1279, 1282 (9th Cir. 2001) (quoting 8 C.F.R. §1208.16(c)(2)). Furthermore, "country conditions alone can play a decisive role in granting relief under the Convention." *Id* at 1280. Under CAT, withholding of removal shall be granted if the applicant's eligibility for withholding is established. 8 C.F.R. §1208.16(d).

   Country condition reports confirm that the Syrian regime is and has been guilty of gross, flagrant, and mass violations of human rights and there is clear evidence of torture by the Syrian regime. **[Exhibit C-V]**. According to Middle East Monitor, "A total of 14,423 people are documented as having been tortured to death since the start of the ongoing Syrian civil war in 2011, a UK-based human rights group has revealed. More 98 per cent of the victims were killed by the regime of President Bashar Al-Assad. **[Exhibit V]**. ""The Syrian regime applies torture to take revenge on the opposition," said the organisation in a report last month. It recorded 72 methods of physical, psychological and sexual torture used by the regime on those it detains." [*Id*].

   If Applicant is forced to return to Syria it is more likely than not that he would be subjected to extreme, cruel, inhumane treatment, and torture at the hands of the regime. Under CAT, and its requirements for relief, Applicant must be granted withholding of removal.

## CONCLUSION

   For all the reasons set forth above, Applicant requests that his asylum application be granted or in the alternative Withholding of Removal and Relief Under CAT.

Respectfully Submitted,

Akram Abusharar, Esq.

APPLICANT'S BRIEF IN SUPPORT OF ASYLUM, WITHHOLDING OF REMOVAL, PROTECTION UNDER THE CONVENTION AGAINST TORTURE

25

44